## S. H. PATE v. STATE.

No. A-2993.   Opinion Filed October 5, 1918.

(175 Pac. 122.)

1.   **JURY—Challenge to Panel—Grounds.** Remarks of the trial judge addressed to persons summoned as petit jurors at the beginning of the term of court at which defendant was tried and convicted, form no ground of challenge to the entire panel of jurors. A challenge to the entire panel of petit jurors can be founded, in a criminal case, only on the grounds stated in section 5842, Rev. Laws 1910.

2.   **TRIAL—Remarks of ·Trial Judge.** Remarks of the trial judge to the panel of jurors summoned at the beginning of the term at which defendant was convicted examined, and **held** not to be prejudicial to this defendant, but properly within the scope of the trial court's duties.

3.   **APPEAL AND ERROR—Admission of Evidence—Harmless Error.** In this state the burden is upon the defendant on appeal, not only to show that the court erred in the admission of evidence, but also, in addition thereto, to satisfy this court that the admission of such evidence injured the defendant substantially.

*Appeal from Superior Court, Muskogee County;*
*H. C. Thurman, Judge.*

S. H. Pate was convicted of unlawful possession of·intoxicating liquors, and he appeals.   Judgment affirmed.

*W. J. Crump, M. G. Bailey,* and *Don M. Crump,* for plaintiff in error.

*S. P. Freeling,* Attorney General, and *R. McMillan,* Assistant Attorney General, for the State.

MATSON, J.   This is an appeal from a judgment of conviction rendered in the superior court of Muskogee county against the defendant for having possession of intoxicating liquors with the unlawful intention of selling the same.   Said judgment was rendered at the January,

1917, term of said court; the information charging in substance that on the 8th day of January, 1917, the said S. H. Pate, in the county of Muskogee, had possession of 482 quarts of whisky with the intention then and there on his part of selling, conveying, bartering, giving away, and otherwise furnishing the same.

In substance the evidence is as follows: That the defendant was running a drug store in the town of Haskell, Muskogee county, Okla., and that there were a number of rooms upstairs over said drug store, some of which were occupied by the defendant and his family; that on the night of the 7th, or the morning of the 8th of January, 1917, B. C. Hughes and several other officers searched the drug store and the rooms upstairs. In room No. 7 upstairs 338 quarts of whisky were found, and in the drug store downstairs 144 quarts of whisky were found; that the defendant was in bed in a room upstairs at the time the officers got there; that there were a lot of empty bottles back of the building in barrels, some of which were whisky bottles; that the drug store owned by the defendant had the reputation of being a place where liquor was sold; that the defendant had the keys both to the room upstairs and to the drug store; that the defendant asked some of the officers "who tipped him off"; that the defendant called someone over the telephone at the time the officers were there and asked whoever he was talking to to get in touch with his lawyer, stating in substance:

"They have got me this time. All the law in the country is here. I have just throwed up my hands."

The defendant testified in his own behalf in substance that, on the morning the liquor was found in the drug store and in room No. 7 upstairs, he was sick in bed; that he had been running the drug store at that place since

the 15th of November, 1916; that the whisky found there did not belong to him, and that he had no knowledge of its being there; that his wife had rented room No. 7 to Ed McGinnis; that they had 14 rooms upstairs; that he and his wife occupied two, and the balance of the rooms were rented; that his wife rented the rooms and owned the building; that on the evening of the 7th of January McGinnis borrowed the keys to the drug store, stating that he wanted to go down and get something out of the store; that defendant's wife gave McGinnis the keys, and that, when McGinnis came back, he threw the keys in at the door where defendant lived upstairs; that defendant had no knowledge of the fact that McGinnis wanted to put liquor in the store, or in room No. 7; that the automobile standing at the back of the building at the time the officers made the search belonged to McGinnis; that defendant sent word to McGinnis in the presence of the officers to come and get his car; that McGinnis came and got the car, and that defendant had not seen or heard of McGinnis since that time; that McGinnis had been in and around the town of Haskell for four or five months, and was supposed to be an oil man—that is, was a driller working for wages; that the whisky found in the drug store had evidently been put in there that night when defendant was asleep.

It is contended that the court erred in overruling the motion of plaintiff in error to quash and set aside the panel of jurors serving at the time this case was tried. This motion is based upon a statement, made by the trial court at the beginning of the term at which this cause was tried, to the jurors impaneled at that time, some of whom sat upon the jury in the trial of this case, which statement is as follows:

"Gentlemen, before asking you if you have any excuse to offer why you should not serve as jurors at this term

of court, I want to call your attention to the conditions. This court cannot perform its duty to this country without your co-operation. Today and tomorrow we shall be engaged in the trial of civil cases, and then we shall take up the criminal cases. On account of the rumored conditions existing in this county, I believe that this term of court will be the most important to the county which has been held during the past year, and possibly of more importance than any which will be held in this court during the coming year. Most of you men are busy men and will serve as jurors at a financial sacrifice, but we need just that kind of men to serve as jurors. We must have men in these civil cases who will do the square thing as between the parties, and in these criminal cases, many of which involve alleged violations of the liquor laws, we must have jurors who have the backbone to sit in the jury box, and, when the evidence convinces you as reasonable men that a defendant has flagrantly violated the liquor law, return a conscientious verdict, and fix a punishment such as will really punish for the offense and have a deterring effect on the defendant and others, when tempted to engage in such unlawful transactions. The custom in this county of juries fixing the punishment of this class of offenders, I mean those who are shown to be flagrant violators of the law, at 30 days in jail and a fine of $50, has become, from a practical standpoint, a mere license to engage in an unlawful business, and jurors who haven't enough backbone to fix a punishment under the law sufficient for the offense committed should not sit as jurors in any court. Don't misunderstand me. I am not suggesting that you should convict any man unless you conscientiously believe from the evidence that that man is guilty. The court wants equal and exact justice done, but realizes that it takes good men and good citizens to do it. Under these conditions, I ask, gentlemen, if there are any of you who feel that you should not serve as jurors."

No challenges were interposed to the individual jurors. Sections 5841 and 5842, Revised Laws 1910, provide:

"A challenge to the panel is an objection made to all the trial jurors returned, and may be taken by either party.

"A challenge to the panel may be founded only on a material departure from the forms prescribed by law, in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn, from which the defendant has suffered material prejudice."

It is clear that the remarks of the trial judge above set out at the time of impaneling the jury form no ground of challenge to the entire panel under the statutes of this state, and the defendant does not contend that the remarks of the trial court in any way influenced any individual member of the jury who sat in the trial of this case to return a verdict against him.

However, it is appropriate to remark that the statements made by the trial judge in this case were entirely proper. It has always been a custom of this jurisdiction for the trial judge to admonish petit juries summoned to sit at any particular term as to their duties under the law. There is nothing in the remarks directed against any particular persons known to be charged with the violation of the criminal law at that term of court. The admonitions given by the court to the jury were applicable alike to all those who were proven guilty of a violation of the prohibitory liquor statutes, and the fact that the court said that, where a flagrant violation of such statutes was proven beyond a reasonable doubt, the offender should not be dismissed with the lowest fine and imprisonment, is certainly to be commended rather than condemned; and where, as in this case, the evidence is convincing that the defendant supplied himself with a quantity of whisky sufficient nearly to float an ordinary battleship, he is in a very delicate

position, to say the least, to complain of remarks of the court above set out.

A person who violates the laws of this state by selling intoxicating liquors does so after mature and thoughtful consideration, and solely for the purpose of gain. Such a violator makes it his business to disrespect and disregard the law, and to cause others to do the same thing. The evidence of guilt in this case is so overwhelming, and the defense interposed so flimsy, as not to merit serious consideration.

Among other things, it is contended that upon cross-examination the defendant was compelled to admit that he had paid the retail liquor dealer's license to the federal government for a period prior to the time this whisky was found on his premises, and under his control; but it is contended that this was prejudicial error, because the payment did not cover the particular time alleged in the information, and counsel cite the case of *Tucker v. State,* 9 Okla. Cr. 555, 132 Pac. 689, to support their contentions. But the Tucker case was based upon a conviction for a violation committed prior to the taking effect of the statute making the possession of more than one gallon at a person's residence, or more than one quart of liquor at a person's place of business, *prima facie* evidence of an intent to violate the law. In this case, the violation occurred after that statute took effect, and the same presumption obtained against this defendant based upon the quantity found as obtained, based upon the payment of the retail liquor tax. The admission of such testimony, therefore, in this case, cannot be held to be prejudicial.

The judgment of conviction, that the defendant pay a fine of $500 and be imprisoned in the county jail for a period of six months, is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.